*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0208P (6th Cir.)
File Name: 04a0208p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

KYLLEEN HARGRAVE-
THOMAS,
     *Petitioner-Appellee,*

    *v.*

JOAN YUKINS,
     *Respondent-Appellant.*

No. 02-2152

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 00-40171—Paul V. Gadola, District Judge.

Argued: October 30, 2003

Decided and Filed: July 6, 2004

Before: NELSON, CLAY, and COOK, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Joseph A. Puleo, OFFICE OF THE
PROSECUTING ATTORNEY, COUNTY OF WAYNE,
Detroit, Michigan, for Appellant. Andrea D. Lyon, DePAUL
UNIVERSITY COLLEGE OF LAW, Chicago, Illinois, for
Appellee. **ON BRIEF:** Joseph A. Puleo, OFFICE OF THE

PROSECUTING ATTORNEY, COUNTY OF WAYNE,
Detroit, Michigan, for Appellant. Andrea D. Lyon, DePAUL
UNIVERSITY COLLEGE OF LAW, Chicago, Illinois,
Bridget M. McCormack, MICHIGAN CLINICAL LAW
PROGRAM, Ann Arbor, Michigan, for Appellee.

   NELSON, J., delivered the opinion of the court, in which
COOK, J., joined. CLAY, J. (pp. 14-20), delivered a separate
dissenting opinion.

———————————

**OPINION**

———————————

   DAVID A. NELSON, Circuit Judge. This is an appeal
from an order granting a writ of habeas corpus. The key issue
is whether the state trial court's refusal to hold an evidentiary
hearing on certain ineffective assistance claims which the
petitioner had asserted in a timely motion for a new trial
constituted "cause" for the petitioner's subsequent failure to
assert a different ineffective assistance claim in her direct
appeal. We conclude that the denial of an evidentiary hearing
on the particular ineffective assistance claims that were
asserted initially did not constitute cause for the delay (which
proved to be fatal) in asserting the new ineffective assistance
claim. Accordingly, and because the procedural default
cannot be excused on other grounds, we shall reverse the
grant of the writ.

I

   After a bench trial in a Michigan state court, the petitioner,
Kylleen Hargrave-Thomas, was found guilty of first degree
murder and arson. The court determined that early one
morning Ms. Hargrave-Thomas entered the home of her
boyfriend while he was sleeping, stabbed him in the heart
with a knife she had taken from his kitchen, and set his bed on
fire. She was sentenced to life in prison.

Ms. Hargrave-Thomas moved for a new trial, arguing, among other things, she had been denied effective assistance of counsel by reason of the fact that her trial lawyers had neglected to move for the suppression of certain evidence and had failed to object to alleged prosecutorial misconduct. Ms. Hargrave-Thomas asked the court to hold an evidentiary hearing if it could not grant the requested relief on the existing record.

The prosecution opposed the motion and argued that an evidentiary hearing was unnecessary. The acts or omissions of counsel cited by Ms. Hargrave-Thomas were already matters of record, the prosecution maintained, and the record showed they lacked merit. The trial court accepted the prosecution's argument and denied the motion for a new trial without conducting an evidentiary hearing.

Ms. Hargrave-Thomas then appealed her conviction, asserting the same ineffective assistance claims she had raised in her motion for a new trial. She also moved for a remand to the trial court for an evidentiary hearing. The state court of appeals denied the remand motion "for failure to persuade the Court of the necessity of a remand at this time." The court went on to affirm Ms. Hargrave-Thomas' conviction, holding among other things that Hargrave-Thomas had not established that she had been prejudiced by the alleged deficiencies in her lawyers' performance. The Michigan Supreme Court denied Ms. Hargrave-Thomas' application for leave to appeal.

Next, represented by new counsel, Ms. Hargrave-Thomas filed a motion with the trial court seeking post-appeal relief from judgment under Chapter 6.500 of the Michigan Court Rules. The motion raised a new claim of ineffective assistance of trial counsel – one that Ms. Hargrave-Thomas acknowledged had not been raised in her motion for a new trial or in her appeal. This new claim was based on her trial counsel's alleged failure to investigate the case and interview witnesses. Ms. Hargrave-Thomas asked the trial court to

order her immediate release or, in the alternative, to allow discovery and to hold an evidentiary hearing.

The state argued, in response, that consideration of the new ineffective assistance claim was barred by M.C.R. 6.508(D)(3), Ms. Hargrave-Thomas having failed to establish "good cause" for not raising the claim on appeal and "actual prejudice" resulting from the allegedly ineffective assistance.[1] Hargrave-Thomas replied that she could not have raised the failure-to-investigate claim on appeal because the facts supporting that claim were not in the trial record and were not known to her at the time.

The trial court denied the motion for relief from judgment on both procedural and substantive grounds. First, the court held that Ms. Hargrave-Thomas "fail[ed] to establish 'good cause' for not raising" the new ineffective assistance claim on appeal. The court then addressed the merits of the claim and rejected it on the ground that an attorney's failure to investigate "do[es] not constitute ineffective assistance of counsel." The court did not hold an evidentiary hearing.

---

[1]M.C.R.6.508(D)(3) provides, in part, that "[t]he court may not grant [post-appeal] relief to the defendant if the motion

\* \* \*

"(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

"(a)  good cause for failure to raise such grounds on appeal or in the prior motion, and

"(b) actual prejudice from the alleged irregularities that support the claim for relief.

\* \* \*

"The court may waive the 'good cause' requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime."

Ms. Hargrave-Thomas sought leave to appeal, but both the court of appeals and the supreme court denied leave on the ground that Hargrave-Thomas had failed "to meet the burden of establishing entitlement to relief under MCR 6.508(D)."

Ms. Hargrave-Thomas then filed her federal court petition for a writ of habeas corpus. The petition asserted four grounds for relief, one of which was a tripartite ineffective assistance claim. The claim was based on (1) trial counsel's alleged failure to investigate and interview witnesses, (2) the failure to move to suppress evidence, and (3) the failure to object to alleged prosecutorial misconduct. With respect to the failure-to-investigate branch of the ineffective assistance claim, the state responded that the Michigan courts had rejected the claim on procedural grounds and Ms. Hargrave-Thomas had not shown "cause" for her procedural default.

Prior to the hearing on Ms. Hargrave-Thomas' petition, the district court instructed counsel for both parties to be prepared to discuss what the court perceived as a "Catch-22." Because Ms. Hargrave-Thomas' requests for an evidentiary hearing were denied, the court said, she was not able to raise her failure-to-investigate claim on direct appeal. And because she had not raised the failure-to-investigate claim on direct appeal, she was barred from raising it in her collateral proceeding. "It thus appears," the district court said, that "the state procedural rules prevented Petitioner from raising her failure-to-investigate claim until she reached this Court."

After argument, the district court concluded that the denial of the requests for an evidentiary hearing constituted "cause" for Ms. Hargrave-Thomas' procedural default. The court further concluded that Hargrave-Thomas was prejudiced by her trial attorneys' failure to investigate. The court therefore ordered that Hargrave-Thomas be granted a new trial or be released from custody. (The court rejected Hargrave-Thomas' other claims for relief, including the remaining branches of her ineffective assistance claim.) The state has filed a timely notice of appeal.

## II

In general, a federal court may not consider a claim for habeas corpus relief if the claim was procedurally defaulted in state court – *i.e.*, if the last state court to render a judgment in the case rejected the claim because it was not presented in accordance with the state's procedural rules. See, *e.g.*, *Harris v. Reed*, 489 U.S. 255, 262 (1989). A procedurally defaulted claim may be considered in federal habeas corpus proceedings only if the petitioner either shows "cause" for his failure to comply with the state's procedural rules and "prejudice" resulting from the alleged violation of federal law or shows that the federal court's refusal to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); see, *e.g.*, *Harris*, 489 U.S. at 262.

The question presented in the case at bar is whether the district court erred in ruling that "cause" and "prejudice" excused the procedural default of Ms. Hargrave-Thomas' failure-to-investigate claim. The district court's application of the "cause and prejudice" rules must be reviewed de novo. See, *e.g.*, *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999). Because we are reviewing a federal court's application of legal rules, and not the state courts' adjudication of the claim, we are not called upon to determine whether any state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d). Such a determination would become necessary if we were to conclude that the failure-to-investigate claim is not procedurally barred – *i.e.*, if we were to reach the merits of the claim. For reasons to which we now turn, however, we conclude that Hargrave-Thomas' claim is procedurally barred.

## A

It seems clear that the last state court to render judgment in Ms. Hargrave-Thomas' case rejected her failure-to-investigate claim on procedural grounds. Ms. Hargrave-Thomas, it will

be recalled, did not present the claim on direct appeal before raising it in her collateral motion for relief from judgment. That omission violated a state procedural rule, Michigan Court Rule 6.508(D)(3), which generally precludes relief from judgment "if the motion . . . alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence . . . ." The Michigan Supreme Court, like the trial court and the court of appeals, cited M.C.R. 6.508(D) in rejecting Hargrave-Thomas' failure-to-investigate claim.

Our precedents establish that the state supreme court's one-sentence order – an order saying simply that Ms. Hargrave-Thomas "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)" – "was based on an independent and adequate state procedural rule." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000); *cf. Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002), *modified*, 35 Fed. Appx. 402 (6th Cir. 2002). Despite its brevity, the order constituted a "reasoned" judgment that adequately explained its procedural basis. Because the Michigan Supreme Court "expressly stated" that Hargrave-Thomas' claim was "barred by MCR 6.508(D)," see *Simpson*, 238 F.3d at 408, the federal courts may not review that claim absent "cause and prejudice" or a "fundamental miscarriage of justice." See *Harris*, 489 U.S. at 262-63.

B

The "cause" standard in procedural default cases "requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Such factors may include "interference by officials," attorney error rising to the level of ineffective assistance of counsel, and "a showing that the factual or legal basis for a claim was not reasonably available." *Id.* at 493-94 (internal quotation marks omitted). As we have seen, the district court concluded that

the denial of Ms. Hargrave-Thomas' requests for an evidentiary hearing constituted "cause" for her failure to raise the failure-to-investigate claim on direct appeal. This conclusion, we believe, was erroneous.

In *People v. Ginther*, 212 N.W.2d 922, 925 (Mich. 1973), the Supreme Court of Michigan held that a criminal defendant should move for a new trial and seek to make a separate factual record in the trial court if the trial record does not cover the claims he wishes to raise on appeal. Ms. Hargrave-Thomas followed that procedure with respect to her original claims of ineffective assistance – *i.e.*, the claims that her trial attorneys should have moved to suppress evidence and should have objected to alleged prosecutorial misconduct. The trial court declined to hold an evidentiary hearing (and the court of appeals declined to remand for such a hearing), presumably because the claims then in question could be disposed of on the existing record.

Ms. Hargrave-Thomas' position seems to be that she should have been granted a *Ginther* hearing to develop an ineffective assistance claim different from the claims she raised in her motion for a new trial and on direct appeal. We find no basis for this position in Michigan law. *Ginther* authorizes the creation of a record to support claims which the defendant "wishes to urge on appeal" – not claims which the defendant has expressed no wish to urge on appeal. *Ginther*, 212 N.W.2d at 925. Neither *Ginther* nor, to our knowledge, any other Michigan authority permits the use of an evidentiary hearing to illuminate claims which have not been asserted or to unearth claims of which the defendant may be unaware.[2]

_____

[2]Our understanding of Michigan law on this point accords, we believe, with that of the Michigan Supreme Court. In rejecting Ms. Hargrave-Thomas' failure-to-investigate claim on the basis of procedural default, that court necessarily determined that the refusal to hold a *Ginther* hearing did not constitute "good cause" for the default. See M.C.R. 6.508(D)(3). In the Supreme Court's view, therefore, the trial court was not required to hold a hearing for the purpose of developing unraised

Had Ms. Hargrave-Thomas raised the failure-to-investigate claim in her motion for a new trial, and had she requested a *Ginther* hearing in connection with that claim, we have no reason to suppose that her request would not have been granted. Under the circumstances, we believe that it was Ms. Hargrave-Thomas' failure to raise the claim, and not any misguided action of the state courts, that caused the procedural default. Ms. Hargrave-Thomas never having alleged ineffective assistance on the part of her post-trial and appellate counsel, this failure does not constitute an "objective factor external to [her] defense." *Carrier*, 477 U.S. at 488.

Ms. Hargrave-Thomas contends that she had no way of knowing about her failure-to-investigate claim when she filed her new trial motion; she contends, in other words, that "the factual . . . basis for [the] claim was not reasonably available" to her at that time. *Id.* We are not persuaded. Even if Hargrave-Thomas had no meaningful communication with her trial attorneys about the preparation of her case, she knew from her attendance at trial that the attorneys did not call any witnesses – a fact that might easily lead one to suspect inadequate preparation. Moreover, the attorney representing Ms. Hargrave-Thomas after the trial could have interviewed the trial attorneys to discover any potential claims.[3] And Hargrave-Thomas was able to raise the failure-to-investigate claim in her motion for relief from judgment, after all, without having had the benefit of an evidentiary hearing.

_____

claims.

[3]Ms. Hargrave-Thomas contends that her post-trial and appellate counsel had no duty to investigate potential claims that were not apparent from the trial record. Regardless of whether this contention (which the state disputes) is correct, it seems clear that no court rule or trial court ruling prevented Hargrave-Thomas' counsel from conducting such an investigation.

We are not persuaded, in short, that the state courts' refusal to order a *Ginther* hearing constituted "cause" for Ms. Hargrave-Thomas' procedural default. Both "cause" and "prejudice" must be shown when a habeas petitioner seeks to excuse a procedural default, see *Carrier*, 477 U.S. at 494-95, so we need not decide whether Hargrave-Thomas has shown "prejudice" resulting from her trial attorneys' alleged failure to investigate. See *Smith v. Murray*, 477 U.S. 527, 533 (1986).

C

As we have said, a procedurally defaulted claim may be reviewed in habeas proceedings despite the absence of a showing of "cause" if such review is necessary to avoid a fundamental miscarriage of justice. See, *e.g.*, *Coleman*, 501 U.S. at 750. The "fundamental miscarriage of justice" test is met only in the "extraordinary case" where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier*, 477 U.S. at 496; see *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him" in the light of the evidence that was not presented at trial. *Schlup*, 513 U.S. at 327.

Applying this standard, we are unable to conclude that Ms. Hargrave-Thomas has shown it probable that she is actually innocent. Hargrave-Thomas relies primarily on five affidavits, each of which was executed about six years after the events at issue.[4] None of the affiants testified live at the hearing on the habeas petition.

_____

[4]The district court found these affidavits sufficient to show prejudice resulting from the alleged failure to investigate. Without commenting on that finding, we note that the "fundamental miscarriage of justice" test requires a petitioner " to make a stronger showing than that needed to establish prejudice." *Schlup*, 513 U.S. at 327.

According to the affidavit of Deborah Smulsky, a co-worker, Ms. Hargrave-Thomas said on the day before the murder that the decedent, Joe Bernal, had proposed marriage the previous night. Hargrave-Thomas argues that this evidence undercuts the prosecution's theory as to motive – namely, that Bernal had spurned Hargrave-Thomas. But there is no necessary conflict between Ms. Smulsky's testimony and the prosecution's theory. Hargrave-Thomas could have misled Smulsky. Or Bernal could have proposed one day and retracted the proposal the next. Because Smulsky's testimony does not compel a finding that Hargrave-Thomas lacked motive, we think a reasonable factfinder could have convicted Hargrave-Thomas despite the new evidence.

Ms. Hargrave-Thomas' sons, Nathan and John, said in their affidavits that their mother awoke them on the day of the murder at 6:15 a.m. and 6:30 a.m. respectively, and that she seemed to be behaving normally then. Dennis Hewitt, Nathan's guidance counselor, similarly swore that Hargrave-Thomas was not upset or agitated when she met with him between 7:30 and 8:00 that same morning. This evidence might have aided the defense at trial by showing that Hargrave-Thomas was calm and composed within an hour or two after Mr. Bernal's bed is thought to have been set on fire. Calmness does not always mean innocence, however, and the probative value of this evidence, we believe, falls short of what is required.

Finally, Wesley Sibu, a newspaper delivery person, stated in his affidavit that he saw "a man in a uniform" – possibly a policeman or fire-fighter – at Mr. Bernal's house at 4:30 on the morning of the murder. The man told him that there had been a fire, but Mr. Sibu did not see any police cars or fire trucks. These facts could suggest that the "man in a uniform" was the perpetrator. The district court found Sibu's affidavit "especially significant" because other evidence suggested that another potential suspect, Ms. Hargrave-Thomas' former boyfriend, "may have been falsely representing himself as a police officer."

There are substantial inconsistencies, however, between Mr. Sibu's affidavit – executed six years after the fact – and statements he made closer in time to the murder and arson. At Ms. Hargrave-Thomas' preliminary examination, Sibu said that he saw a police car and spoke with a police officer at 4:30 a.m., and that he was not sure whether that was the day of or the day after the fire. He also said he was "positive" that Mr. Bernal's garage door was closed when he spoke with the officer; in his affidavit he stated that the door was three-quarters open. Moreover, Sibu told police on the day of the fire that when he delivered the paper at about 4:30 that morning "there were no cars in the driveway or the street, and he didn't notice anything unusual." Presented with these inconsistencies, a reasonable juror could easily find Mr. Sibu's latest account unpersuasive.

In sum, we cannot say that "no juror, acting reasonably, would have voted to find [Ms. Hargrave-Thomas] guilty" in the light of the proffered affidavits. *Schlup*, 513 U.S. at 329. The other evidence cited in Hargrave-Thomas' brief – none of which directly exculpates her – also fails to compel a finding of actual innocence.[5] We conclude that the "miscarriage of justice" exception does not excuse Hargrave-Thomas' procedural default.

The order granting Ms. Hargrave-Thomas' petition for a writ of habeas corpus is **REVERSED**, and the case is

---

[5]Ms. Hargrave-Thomas points to a polygraph test flunked by her former boyfriend, Bob Stone. The results of that test indicate that Mr. Stone answered one or more of the following questions untruthfully: (1) Do you know for sure who killed Joe? (2) Did you kill Joe? (3) Did you assist in any way to cover up this crime? (4) Are you withholding from me any information concerning the death of Joe? (All of Stone's answers were "no.") Because the test did not determine which of the questions were answered untruthfully, this evidence does not directly exculpate Hargrave-Thomas. It could prove nothing more, for example, than that Hargrave-Thomas confessed to Stone.

**REMANDED** to the district court for entry of an order dismissing the petition.

———————

**DISSENT**

———————

CLAY, Circuit Judge, dissenting. The question before this Court is whether the district court erred in ruling that there was cause and prejudice to excuse the procedural default of Petitioner's ineffective assistance of counsel claim. In analyzing that claim, we must consider whether the trial court erred in denying Petitioner's three requests for evidentiary hearings, which were needed to determine whether facts existed to support the failure-to-investigate element of Petitioner's ineffective assistance of counsel claim. Because Petitioner successfully established cause and prejudice to overcome her procedurally defaulted claim, albeit through the district court's evidentiary hearing, I would affirm the grant of Petitioner's writ of habeas corpus.

Since a petitioner can generally demonstrate cause if she can present a substantial reason to excuse the default, *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994), a showing of such cause must ordinarily turn on whether the petitioner can establish that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 486-89 (1986). Here, Petitioner argues that she was prohibited from asserting her ineffective assistance of counsel/failure-to-investigate claim on direct appeal since factual support was lacking in the trial record. During Petitioner's direct appeal, she moved for a *Ginther* hearing three times, all which were denied.[1]  Because those hearings were denied, the direct

———————

[1]Under *Ginther*, the Michigan Supreme Court requires a defendant on direct appeal to request an evidentiary hearing in the state trial court when it intends to raise ineffective assistance of counsel and lacks the factual support in the record. *People v. Ginther*, 212 N.W.2d 922, 925 (Mich. 1973).

appeal was limited to the issues contained in the trial record, which excluded Petitioner's failure-to-investigate claim. *Id.*; *see also People v. Avant*, 597 N.W.2d 864, 870 (Mich. Ct. App. 1999).

During proceedings in connection with Petitioner's habeas petition in federal district court, the court allowed time for additional discovery and an evidentiary hearing. After additional testimony and argument, the district court found that Petitioner's counsel was "manifestly and flagrantly ineffective for failure to investigate or call witnesses or present evidence." At trial, Petitioner's defense counsel, Rene Cooper, and co-counsel, Nicholas Venditelli, received no compensation for Petitioner's case. The defense did not present a theory of the case, made no opening statement and put forth no evidence. During closing arguments, attorney Cooper stated that the prosecution's proof amounted to nothing more than innuendos and speculation, and thus formed an insufficient basis upon which to find petitioner guilty. However, defense counsel subsequently conceded that the prosecution had proven that "the opportunity was there," when referring to Petitioner's alleged involvement in the crime.

An ineffective assistance of counsel claim can supply the cause that, together with prejudice, would excuse a procedural default. *Murray*, 477 U.S. at 488. It is apparent from the record that Petitioner's trial counsel was inadequate and ineffective, which should have been reasonably apparent to the trial court, or any reviewing court. The state court may have had insufficient evidence of ineffective assistance of counsel to grant relief to Petitioner, but certainly had a sufficient basis to grant a *Ginther* hearing.

Although once a defendant asserts a claim of failure-to-investigate upon direct appeal, a *Ginther* hearing is warranted, the grant of an evidentiary hearing is generally otherwise discretionary. 212 N.W.2d at 925. There is a strong presumption in favor of courts engaging in a factual analysis

when an ineffective assistance of counsel claim arises. *See People v. Barnett*, 414 N.W.2d 378, 382 (Mich. App. Ct. 1978) (holding that the "Court will not 'second-guess' matters of trial strategy, nor assess the competency of counsel through the use of hindsight"); *see also United States v. Brown*, 276 F.3d 211, 217-18 (6th Cir. 2002) (deferring a review of an ineffective assistance of counsel claim to a post conviction proceeding when looking to dismiss a federal conviction, where the record was not adequately developed). This Court has previously recognized the importance of the development of a full record when assessing an ineffective assistance of counsel claim. *Smith v. Hofbauer*, 312 F.3d 809, 821, n.2 (citing *Ginther* for the proposition that "a defendant who wishes to advance claims that depend on matters not of the record can properly be required to seek at the trial level an evidentiary hearing for the purpose of establishing his claim . . . except in the rare case where the record manifestly shows that the judge would refuse a hearing; in such a case the defendant should seek on appeal, not a reversal for his conviction, but an order directing the trial court to conduct the needed hearing"). This was precisely the district court's logic in granting Petitioner time for discovery prior to its ruling on her habeas petition.

Had any one of Petitioner's three *Ginther* hearing requests been granted, there is a substantial likelihood that Petitioner's ineffective assistance of counsel claim would have revealed the ineffective assistance of counsel received by Petitioner as a result of Petitioner's trial attorney's complete failure to properly investigate defense witnesses and cross-examine prosecution witnesses. The reason these facts were not uncovered until the district court's evidentiary hearing was because of the improvident reasoning and decisions of the state court, which deemed Petitioner's ineffective assistance of counsel claims to be without merit. The Respondent and the majority opinion inappropriately speculate as to what information would have come out of any one of Petitioner's three requested *Ginther* hearings had Petitioner not been denied the hearings; however, Respondent, and the majority,

cannot say that these external factors were not the cause of Petitioner's procedural default.**2**

Furthermore, when Petitioner's procedurally defaulted claim is properly examined, Petitioner is entitled to a review of the "cause and prejudice" analysis in which the Michigan trial court engaged, with respect to Petitioner's failure-to-investigate portion of her ineffective assistance of counsel claim. The majority opinion maintains that the district court impermissibly considered the merits of Petitioner's claim and that we are to "review the federal court's application of legal rules" only, and are to reach the merits of Petitioner's claims only if we conclude that "the failure to investigate claim is not procedurally barred."

Nevertheless, it is well settled that a prisoner seeking habeas relief in federal court must have presented the claim upon which he seeks relief to the state appellate courts. *Gonzales v. Elo*, 233 F.3d 348, 352 (6th Cir. 2000). If such a claim is procedurally defaulted in state court, that procedural default carries over to federal court, precluding habeas review. *Simpson v. Jones*, 238 F.3d 399, 405-06 (6th Cir. 2000). In order for the claim to be barred in federal court, however, the last state court rendering a judgment in the case must have done so on adequate and independent state grounds, evidenced by the existence of a state procedural bar

---

**2**Petitioner brings to the Court's attention *Massaro v. United States*, a Supreme Court holding stating that federal courts, in determining federal habeas petitions for ineffective assistance of counsel, need not be precluded from reviewing such a claim on collateral review when not raised first on direct appeal. 538 U.S. 500, 504-05 (2003). The Court discussed policy determinations concerning why the requirement of a direct appellate review prior to collateral review may undermine the purpose of such a claim when adequate factual support in the trial record may be lacking. *Id.* at 507-08. The Court also went on to distinguish this procedural holding from that which would be followed by states, stating that a "growing majority of state courts now follow the rule we adopt today." *Id.* at 508 (citing *Commonwealth v. Grant*, 813 A.2d 726, 735-38 n.16 (Pa. 2002) (cataloging other states' case law adopting this position)).

determining the judgment's result. *Id.* (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Therefore, to decide a procedurally defaulted claim the federal court must "determine [whether] a petitioner failed to comply with a state procedural rule; and it also must analyze whether the state court based its decision on the state procedural rule." *Id.* at 406.

It is undisputed that Petitioner's first attempt to argue ineffective assistance of counsel based on a failure-to-investigate was raised in the state court collateral appeal and not the direct appeal. Petitioner argues that the district court correctly looked to the November 23, 1998, Michigan Circuit Court ruling as the last court opinion to provide a reasoned decision for the dismissal of Petitioner's request for relief regarding counsel's failure to investigate, basing its denial on the state prohibition in M.C.R. 6.508 (D), and also addressing the merits of Petitioner's claim as it performed a "cause and prejudice" analysis. Respondent claims, and the majority agrees, that the district court erred in looking to the November 1998 decision because the Michigan Supreme Court order, dated April 28, 2000, was the last court decision in this matter and did not address the cause or prejudice exceptions to a procedural bar, or discuss the merits of Petitioner's habeas request.

This Court in *Burroughs v. Makowski*, 282 F.3d 410, 413 (6th Cir. 2002), held that the reviewing federal court, when determining whether petitioner's claim was procedurally barred, must look to the last state court decision to see if claims were denied based upon a state procedural bar, even if the ruling was brief and did not explicitly reference the particular section of the state statute on which its judgment is based. *Id.* There, the last court to consider the matter, the Michigan Supreme Court, based its denial on the state procedural bar of M.C.R. 6.508 (D), but not specifically subpart (3) of (D); however, this Court found that the Michigan Supreme Court and the previous Michigan Court of Appeals' decisions presented sufficient explanations that their

rulings were based on the procedural default. *Id.* This case was subsequently remanded for a "cause and prejudice" analysis, to determine whether petitioner's claim warranted habeas relief, in view of the state procedural bar. *Burroughs v. Makowski*, 35 Fed. Appx. 402 (6th Cir. 2002) (unpublished table decision).

In the instant case, the district court's findings are similar to those in *Burroughs*, except here the court looked to the previous Circuit Court's November 1998 opinion instead of the latest opinions of the Michigan Supreme Court and the Michigan Appellate Court, since the procedural aspects of all three opinions were duplicative. The early November 1998 opinion specifically stated that Petitioner's claims were subject to a "cause and prejudice" analysis precisely because they were not brought up on direct appeal in accordance with M.C.R. 6.508 (D)(3)(a)(b). The district court's reliance on the Michigan Court of Appeals or Michigan Supreme Court would not have differed in result, as those decisions also stated that Petitioner's claim was denied ". . . because the defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508 (D)." This Court should then view these latter decisions of the Michigan Court of Appeals and Michigan Supreme Courts as sufficiently explaining their rulings based on the procedural bars, *Burroughs*, 282 F.3d at 413, found in the previous November 1998 Circuit Court decision. *See Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991) (citing *Ylst*, 111 S.Ct. at 2595 ("[W]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same grounds")). Moreover, since Petitioner bears the burden of showing cause and prejudice when needed, the November 1998 Circuit Court decision addressed these issues, which the district court was permitted to review. *Simpson*, 238 F.3d at 408.

The majority argues as though the district court's analysis of the latter Michigan state court opinions should have deemed Petitioner's claims procedurally barred and dismissed

with prejudice her petition for habeas relief; however, this would be in contravention of this Court's procedural default analysis and the requirement of a "cause and prejudice" determination for a petitioner attempting to establish an exception to a procedurally defaulted claim when requesting habeas relief. *See Burroughs*, 282 F.3d at 413. This is precisely the review in which the November 1998 court's decision engaged, and the determination upon which the district court reversed. Therefore, even if the latter Michigan Supreme Court decision was reviewed to determine the viability of habeas relief on the merits of Petitioner's claim, the district court would still need to review the reasoning of the November 1998 decision, to find the reasoning for such dismissal, or if no reasoning was present there, the court would then have had to remand for a "cause and prejudice analysis." *Burroughs*, 35 Fed. Appx. 402.

I therefore respectfully dissent from the majority opinion insofar as I believe Petitioner has shown "cause and prejudice" to overcome the default of her claim of her counsel's failure-to-investigate, thus warranting the district court's grant of habeas relief.