NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0175n.06

No. 16-2172

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ROUMMEL INGRAM,

    Petitioner-Appellant,

v.

JOHN PRELESNIK,

    Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)

**FILED**
Apr 04, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE: MERRITT, GRIFFIN, and DONALD, Circuit Judges.

GRIFFIN, Circuit Judge.

Petitioner Roummel Ingram appeals the district court's judgment denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. A Michigan state court jury convicted Ingram of armed robbery, assault with intent to do great bodily harm, felonious assault, and three counts of possession of a firearm during the commission of a felony, all for his involvement in a robbery of a liquor store that ended with Ingram shooting the store clerk. After two unsuccessful attempts at post-conviction relief in the Michigan courts, he filed the instant habeas petition in the United States District Court for the Eastern District of Michigan, which denied his petition on the merits without addressing respondent's procedural default defenses. Our court granted Ingram a certificate of appealability (COA) on two claims: ineffective assistance of counsel for failure to raise and preserve a claim related to Ingram's warrantless

arrest, and denial of his Sixth Amendment right to a public trial. For the reasons that follow, we affirm the denial of habeas relief, albeit on grounds that differ from the district court.

I.

In 2007, a Michigan jury convicted Ingram of armed robbery, M.C.L. § 750.529, assault with intent to do great bodily harm less than murder, § 750.84, felonious assault, § 750.82, and three counts of possession of a firearm during the commission of a felony, § 750.227b. *People v. Ingram*, No. 273086, 2007 WL 4245642, at *1 (Mich. Ct. App. Dec. 4, 2007). His convictions stemmed from a robbery of a convenience store in Farmington Hills, Michigan. The Michigan Court of Appeals summarized the facts as follows:

> [Ingram]'s convictions arise out of the July 5, 2005, robbery of the Mug & Jug Wine Shop in Farmington Hills. Co-defendant Shannon McGriff entered the store with [Ingram] while another co-defendant, Kim Thomas, waited in a vehicle at the rear of the store. During the robbery, [Ingram] beat a store employee, Matthew Al-Sheikh, with a gun and threatened to shoot Al-Sheikh if he did not open a safe. [Petitioner] and McGriff took money from a cash register and drawer, but left without opening the safe. [Ingram] shot Al-Sheikh in the chest before he and McGriff fled out the back door.

*Id*. A security camera captured the robbery but did not record the shooting.

This robbery was the third over the course of approximately three weeks in June and July of 2005 conducted by Ingram and his compatriots, with the other two robberies taking place in nearby Saint Clair Shores, Michigan. On June 14, 2005, a Citi-Financial bank location was robbed at gun point by a single male. On July 1, 2005, a Wireless Giant store was robbed at gunpoint by two males. Shortly after the "Mug and Jug" robbery, Farmington Hills police received a tip from an informant that petitioner and McGriff "were overheard bragging at a party that they had committed several robberies in the [Detroit] area." On the basis of this tip, Farmington Hills police and members of a county-wide police task force began surveilling

Ingram's home. During this surveillance, officers observed a Ford Thunderbird arrive at Ingram's house, and a Law Enforcement Information Network check revealed it was wanted for an armed robbery in Saint Clair Shores. After Saint Clair Shores officers were alerted to the Thunderbird's presence at Ingram's house, they took a photographic lineup to the victims of the Citi-Financial and Wireless Giant robberies. Only the Citi-Financial victim, Aisha Mercer, was able to pick Ingram out of the lineup.

Based on this positive identification, Saint Clair Shores police directed Farmington Hills police to arrest Ingram. At this time, however, surveilling officers saw Ingram enter a gold Ford Taurus with two other individuals, and observed the three drive away from the home. Farmington Hills police pulled the vehicle over and arrested all three occupants, including Ingram. Ingram eventually waived his *Miranda* rights, confessed to his involvement in the robberies, and admitted he shot the store clerk at the "Mug and Jug."

At trial, defense counsel conceded that Ingram committed armed robbery and felonious assault, but argued that defendant was not guilty of the charged greater offense of assault with intent to commit murder because the store clerk was shot due to the gun accidentally discharging. *Ingram*, No. 273086, 2007 WL 4245642, at *1. During the presentation of evidence, the prosecution called John Parish to testify. Before he was called to the stand, the prosecutor asked to excuse the jury, at which time she asked the trial judge to "clear[] and secure[]" the courtroom during his testimony. The prosecutor explained that Parish "is an informant that [the prosecution] would like to put on the stand. [And] [i]t has come to the attention of the People that this informant has been receiving death threats as well as his father is receiving death threats because of his participation in this case." Defense counsel responded that he did not know anything about any death threats, but that Ingram had the right to a public trial. Further, defense

counsel argued that, while there may be concerns about some of Ingram's family members making threats against Parish, Ingram's family had an interest in being able to be present and observe the trial. After both sides argued, the trial court stated, simply: "All right. For this witness only I'm going to order that the courtroom be cleared completely." At a later point in the trial proceedings, when the prosecution asked that the courtroom remain closed to the public during the testimony of an additional prosecution witness, the court explained its position on the closure. Thereafter, the court denied the prosecutor's second request for closure.

The jury found Ingram guilty of the lesser offense of assault with intent to do great bodily harm less than murder, and found him guilty of armed robbery, felonious assault, and three counts of possession of a firearm in the commission of a felony, but acquitted him of assault with intent to commit murder. The trial court sentenced him to 285 months to 40 years' imprisonment for armed robbery, 80 months to 10 years' imprisonment for assault with intent to do great bodily harm less than murder, and 2 to 4 years' imprisonment for felonious assault, all consecutive to two years' imprisonment for the three counts of felony firearm. He unsuccessfully sought postconviction relief in the Michigan courts and habeas relief in the district court below.

## II.

"In an appeal from the denial of habeas relief, we review the district court's legal conclusions de novo and its factual findings for clear error." *Scott v. Houk*, 760 F.3d 497, 503 (6th Cir. 2014). Under the Antiterrorism and Effective Death Penalty Act, a state conviction may only be overturned for an issue adjudicated on the merits if it (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the

facts in light of the evidence presented" to the state court. 28 U.S.C. § 2254(d). A claim for habeas relief based upon the first type must show that the state court "arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or that it "confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent and arrive[d] at a result opposite" to that reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted). But when "a state court fails to address federal law, § 2254 does not apply, and the decision is reviewed de novo." *Dando v. Yukins*, 461 F.3d 791, 796 (6th Cir. 2006).

III.

Our court granted petitioner a COA on two issues: ineffective assistance of counsel relating to his claim that state trial and appellate counsel failed to raise and preserve his claim of a warrantless arrest, and violation of his public trial right when the state trial judge closed the courtroom entirely during examination of one of the prosecution's witnesses. Respondent defends both on the merits and on procedural default grounds. The Supreme Court has held that federal courts are not *required* to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); 28 U.S.C. § 2254(b)(2). Therefore, this court will address his ineffective assistance claim on the merits, given that it is an analytically cleaner tack. Furthermore, because "this court may affirm the decision of the district court if it is correct for any reason, even a reason different from that relied upon by the district court," *Taylor v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011), we will address the issue of procedural default on his public trial claim.

A.

Ingram first contends that his trial and appellate counsel were ineffective for failing to "raise and preserve" issues relating to his warrantless arrest. As in all cases alleging ineffective assistance of counsel, we turn to *Strickland v. Washington*'s well-worn framework: a criminal defendant claiming ineffective assistance of counsel must prove that (1) counsel's performance was deficient, and (2) the deficient performance actually prejudiced the defense. 466 U.S. 668, 687 (1984). The deficient performance prong is "measured against an objective standard of reasonableness under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotation marks and citations omitted). Under the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The typical habeas "double deference," *see Cullen*, 563 U.S. at 190, does not apply here, for the state court never addressed the issue on the merits. *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

When the underlying issue relating to ineffective assistance is a Fourth Amendment challenge, the habeas petitioner must show that the "Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). In this case, Ingram claims that his arrest was made without probable cause and, therefore, his subsequent confession while in police custody was inadmissible as flowing from an illegal arrest.[1]

---

[1]At oral argument, petitioner averred that respondent "waived" any claim that Ingram's arrest was supported by probable cause by failing to raise this argument in his appellate brief. But it is petitioner's burden to show both that counsel was constitutionally ineffective, *Strickland*, 466 U.S. at 694, and ultimate entitlement to habeas relief, *cf. Cullen*, 563 U.S. at 181.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. The "ultimate touchstone" in this area of law is "reasonableness." *Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (citation omitted). "In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). The existence of probable cause depends on reasonable conclusions drawn from the facts known to an arresting officer at the time of the arrest. *United States v. Pearce*, 531 F.3d 374, 380–81 (6th Cir. 2008) (quoting *Devenpeck*, 543 U.S. at 152). And the subjective intent of the arresting officer does not matter. *Whren v. United States*, 517 U.S. 806, 813 (1996).

"Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (quoting *Henry v. United States*, 361 U.S. 98, 102 (1959)). "No overly-burdensome duty to investigate applies to officers faced with the prospect of a warrantless arrest." *Id.* And probable cause does not have to relate to a crime that actually results in a conviction. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("The validity of the arrest does not depend on whether the suspect actually committed a crime[.]"); *Devenpeck*, 543 U.S. at 152–54 (finding that there is no Fourth Amendment violation when the criminal offense for which there is probable cause to arrest is not "closely related" to the offense stated by the arresting officer at

---

And petitioner is appealing from a district court decision that found sufficient probable cause to support his arrest, which this court reviews on appeal.

the time of arrest). Part of the difficulty in assessing petitioner's Fourth Amendment claim on the merits arises from the fact that the state trial court was never requested to hold a hearing and elicit testimony from the arresting officer. However, after evaluating the information in the record—the police reports, affidavits, and officer narratives—it is our view that the arresting officer had probable cause to arrest Ingram.

On the day of the arrest, Ingram was surveilled by officers from the county-wide task force, who had already received a tip on July 11, 2005, that "Romeo [sic] Ingram and Shannon McGriff might be responsible for the Armed Robbery and shooting" "at the Mug and Jug." Officers then saw a Ford Thunderbird linked to the robberies at his residence. Shortly after Ingram left his residence, the surveilling officers received word from the Saint Clair Shores police department that Aisha Mercer, the eye-witness victim of one of the robberies, identified Ingram from a photo lineup. On the basis of this information the officers had probable cause to arrest Ingram.[2]

Firsthand observations are entitled to a presumption of reliability. *See, e.g.*, *Peet v. City of Detroit*, 502 F.3d 557, 564 (6th Cir. 2007). The Supreme Court has also held that police departments and officers can rely upon a radio bulletin or flyer stating that another police department has found probable cause to arrest a suspect, as long as the initiating department actually had probable cause. *United States v. Hensley*, 469 U.S. 221, 230–31 (1985). This is true even if the arresting department and officers do not know the specific facts establishing the probable cause. *Id*. Here, the arresting officers were told that a victim of one of the robberies had positively identified Ingram, and that the Saint Clair Shores police had probable cause to

---

[2]While petitioner contends that the police narratives contained inconsistent dates or conflated the facts of the various robberies, (Pet. Br., p. 20-22), these mere scrivener's errors or inconsistencies are insufficient to undermine our finding of probable cause.

arrest him. Even assuming the inconsistencies in the police narratives were not scrivener's error, and the Oakland County officers were actually given erroneous dates or were mistakenly told that the identifying witness was from one of the other two robberies, they were reasonably entitled to rely on the information from the Saint Clair Shores police. *Id.* And that information, coupled with the Ford Thunderbird's presence at Ingram's residence and the informant's tip that Ingram and his cohorts were bragging about the robberies, sufficed for probable cause to arrest Ingram. *Id.*; *Peet*, 502 F.3d at 563–64. Thus, Ingram's warrantless arrest was constitutional and his trial and appellate counsel did not provide ineffective assistance for failing to challenge his arrest given that no Fourth Amendment violation occurred. *Kimmelman*, 477 U.S. at 375.

B.

Ingram next challenges the trial court's decision to close the courtroom to the public during the testimony of one of the prosecution's witnesses. As he did below, respondent defends both on procedural default grounds and on the merits. We resolve this issue on procedural default grounds, contrary to the district court's merits analysis. *See Taylor*, 649 F.3d at 450.

The Supreme Court has described procedural default as one of "two fundamental tenets of federal review of state convictions," along with the related concept of exhaustion. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). Under the doctrine of procedural default, "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Id.* This is so because "a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance," and "concerns of comity and federalism" ground the procedural

default doctrine. *Coleman v. Thompson*, 501 U.S. 722, 730, 732 (1991). We have held that a habeas petitioner procedurally defaults a claim if:

> (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.

*Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc) (quoting *Tolliver v. Sheets*, 594 F.3d 900, 928 n.11 (6th Cir. 2010)). This court may excuse the application of the procedural-default doctrine if it would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Ingram did not raise this issue until his *second* motion for relief from judgment in state court. The Michigan Court of Appeals and Michigan Supreme Court both denied Ingram's applications for leave to appeal the trial court's denial of his second motion under Michigan Court Rule § 6.502(G):

> (G) Successive Motions.

> > (1) Except as provided in subrule (G)(2), . . . one and only one motion for relief from judgment may be filed with regard to a conviction. The court shall return without filing any successive motions for relief from judgment. A defendant may not appeal the denial or rejection of a successive motion.

> > (2) A defendant may file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion. The clerk shall refer a successive motion that asserts that one of these exceptions is applicable to the judge to whom the case is assigned for a determination whether the motion is within one of the exceptions.

Our court has held that § 6.502(G) acts as an adequate and independent state ground for denying review sufficient to procedurally default a claim. *Morse v. Trippett*, 37 F. App'x 96, 106 (6th Cir. 2002). Because the Court of Appeals and Supreme Court denied leave to appeal on this ground, his public trial claim is procedurally defaulted unless he can show "cause and

prejudice excusing the default," *Guilmette*, 624 F.3d at 290, or that it would result in a "fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750.

Not so, argues Ingram. Instead, he contends that the Court of Appeals and Supreme Court orders were *unexplained* orders, and that the last reasoned judgment in this case is the trial court's denial of Ingram's motion for relief from judgment under Rule § 6.508(D)(3). The United States Supreme Court held in *Ylst v. Nunnemaker* that, for purposes of procedural default, the judgment or order with which this court is concerned is "the last *explained* state-court judgment." 501 U.S. 797, 805 (1991). The Court defined an "unexplained order" as "an order whose text or accompanying opinion does not disclose the reason for the judgment." *Id*. at 802. In other words, "[t]he essence of unexplained orders is that they say nothing." *Id*. at 804.

Here, the Court of Appeals denied leave to appeal because:

> Appellant has failed to demonstrate his entitlement to an application of any of the exceptions to the general rule that a movant may not appeal the denial of a successive motion for relief from judgment. [Mich. Ct. Rule §] 6.502(G).

The Supreme Court denied leave because: "Defendant's motion for relief from judgment is prohibited by [Mich. Ct. Rule §] 6.502(G)." *People v. Ingram*, 828 N.W.2d 382 (Mich. 2013). The Supreme Court's order denying leave on the grounds of Rule § 6.502(G) is not unexplained, because it provides a reason for the judgment. *Ylst*, 501 U.S. at 802. And, unlike the Michigan Rule at issue in *Guilmette*, § 6.502(G) has no component that could be characterized as denying leave on substantive, rather than procedural, grounds. *See Guilmette*, 624 F.3d at 291 ("Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or denial of relief on the merits, the orders are unexplained."); *cf. Ylst*, 501 U.S. at 805 (holding that a state order was "unexplained" when, though "it was not utterly silent, neither was it informative with respect to the question" of whether a procedural bar was

applied). The same is true for the Court of Appeals order. Therefore, this claim is procedurally defaulted based upon the explained orders of the Michigan Supreme Court and Court of Appeals.[3]

Ingram may present this procedurally defaulted claim in habeas proceedings only if he proves cause and prejudice. "Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006). The cause question "ordinarily turn[s] on whether . . . some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," and is satisfied by "a showing that the factual or legal basis for a claim was not reasonably available to counsel." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Such factors may include 'interference by officials,' attorney error rising to the level of ineffective assistance of counsel, and 'a showing that the factual or legal basis for a claim was not reasonably available.'" *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004) (quoting *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991)). Ineffective assistance of counsel only suffices if the deficient performance purporting to provide cause for the default would be sufficient to merit its own independent constitutional claim. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

---

[3]Ingram's broader argument on this point is wholly untenable. He argues that the state trial court decision must be the last reasoned decision because Mich. Ct. Rule § 6.502(G)(1) provides that he "may not appeal the denial or rejection of a successive motion." This argument ignores both the caveat in § 6.502(G)(1) that the bar on successive motions is "[e]xcept as provided in subrule (G)(2)," and that appeals *actually* occurred in this case. In fact, the Michigan Supreme Court order notes that leave to appeal was denied not because the *appeal* was barred, but because Ingram's "*motion* for relief from judgment is prohibited by MCR 6.502(G)." (emphasis added). He also would have a difficult time explaining his interpretation of Rule § 6.502(G) as a complete ban on appeals, given the over-900 Michigan Supreme Court orders that deny leave to appeal citing that rule. *See, e.g.*, *People v. McDonald*, 904 N.W.2d 863 (Mich. 2018) (order).

Ingram cannot show cause for his failure to raise the public trial claim within Michigan's procedural rules, i.e., on direct appeal or in his first motion for relief from judgment. Clearly, Ingram and his appellate counsel had the factual and legal basis for this claim available; his trial counsel actually objected to the trial court's closing of the courtroom on "public trial," Sixth Amendment grounds. And he correctly does not raise ineffective assistance of counsel as cause to excuse this default, because his failure to raise the claim in his first pro se motion for relief from judgment in state court precludes a finding of cause based upon ineffective assistance. *See Martinez v. Ryan*, 566 U.S. 1, 15 (2012) (holding that, with a limited exception not relevant here, attorney error in a postconviction proceeding cannot establish cause).

Instead, Ingram contends that cause for his failure to comply with Michigan's procedural rules arises from the new rule of law established in *Presley v. Georgia*, 558 U.S. 209, 213–15 (2010), wherein the Supreme Court held that the right to a public trial extended to the voir dire context, and that trial courts must consider lesser alternatives to complete closure. *See Reed v. Ross*, 468 U.S. 1, 16 (1984) ("[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures."). But as Ingram's cited precedent makes clear, his "new" rule of law is not truly novel. In fact, the majority opinion is littered with language that supports just the opposite conclusion. *Presley*, 558 U.S. at 209 ("The Supreme Court of Georgia's affirmance contravened this Court's clear precedents."); *id*. at 213 ("In the instant case, the question then arises whether it is so well settled that the Sixth Amendment right extends to jury *voir dire* that this Court may proceed by summary disposition. The point is well settled . . . ."); *id*. at 214 ("The conclusion that trial courts are required to consider alternatives to closure even when they are not offered by the parties is clear not only from this Court's

precedents but also from the premise that the process of juror selection is itself a matter of importance, not simply to the adversaries but to the criminal justice system.") (alteration and citation omitted).

Because *Presley* did not establish a new rule of law, Ingram has failed to establish cause for his failure to abide by Michigan's procedural rules and his habeas claim relating to his public trial right is procedurally defaulted. Moreover, his confession and the other evidence presented against him at trial preclude a finding that the application of the procedural-default doctrine would result in a "fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750, which is generally defined as cases "where a constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496. Nowhere in Ingram's briefing does he attempt to argue that he is actually innocent of the crime. And even if he did, his confession would all but foreclose that argument. Therefore, we hold that Ingram's Sixth Amendment claim for habeas relief is procedurally defaulted.

IV.

We affirm the judgment of the district court.