Larry S. LUCAS, Petitioner–Appellee (97–5907)/Petitioner–Appellant (97–6047),

v.

Michael J. O'DEA, Warden, Respondent–Appellant (97–5907)/Respondent–Appellee (97–6047).

Nos. 97–5907, 97–6047.

United States Court of Appeals, Sixth Circuit.

Argued (97–6047) and Submitted (97–5907) Dec. 18, 1998.

Decided June 2, 1999.

Larry S. Lucas, Burgin, Kentucky, W. Brady Miller, Marks & Miller, Louisville, Kentucky, for Petitioner–Appellee in No. 97–5907.

Larry S. Lucas, Burgin, Kentucky, Scott T. Wendelsdorf, Jamie L. Haworth, Assistant Federal Public Defender (argued and briefed), Patrick J. Bouldin, Assistant Federal Public Defender (briefed), Louisville, Kentucky, for Petitioner–Appellant in No. 97–6047.

Vickie L. Wise, Assistant Attorney General (briefed), Frankfort, Kentucky, for Respondent–Appellant in No. 97–5907.

Vickie L. Wise, Assistant Attorney General (argued), Frankfort, Kentucky, for Respondent–Appellee in No. 97–6047.

Before: MERRITT, KENNEDY, and GILMAN, Circuit Judges.

## AMENDED OPINION

GILMAN, Circuit Judge.

In 1988, a jury trial in the Circuit Court of Meade County, Kentucky resulted in

Larry S. Lucas's being convicted on two counts of first-degree robbery, one count of wanton murder, and one count of being a persistent felony offender in the first degree. These convictions arose out of the armed robbery of a pawn shop by Lucas and two other men, during which the shop's owner was shot and killed. Lucas was sentenced to 180 years of imprisonment for the murder, 100 years of imprisonment for the robbery of the shop owner, and 50 years of imprisonment for the robbery of a customer.

This matter is now before us as a result of the petition for a writ of habeas corpus that Lucas filed in the United States District Court for the Western District of Kentucky pursuant to 28 U.S.C. § 2254. The district court denied all of his claims but one. It granted relief on the claim that a fatal variance existed between Lucas's indictment and the jury instruction on the murder charge. The district court held that this amounted to a constructive amendment to the indictment, depriving him of his Fourteenth Amendment right to be on notice of the charges against him.

Lucas appeals the district court's denial of his claims that (a) defense counsel was ineffective in failing to object to the "persistent felony offender" sentence enhancement, and (b) he was exposed to double jeopardy. The Commonwealth appeals the district court's grant of habeas corpus relief as to the murder conviction. For the reasons set forth below, we **AFFIRM** all of the decisions of the district court.

## I. BACKGROUND

On January 9, 1987, Larry Lucas entered a pawn shop in Radcliffe, Kentucky with two other men, Crawford Irwin and Bruce Walker. The three men robbed the pawn shop. In the course of the robbery, the store's owner, Paul Zurla, was shot and killed. The men also robbed Christopher Wheeler, a customer of the store. The evidence at trial showed that Lucas was carrying a .45 caliber pistol at the time of the robbery.

On February 2, 1987, Lucas was indicted by the Meade County grand jury for (a) the robberies in the first degree of Christopher Wheeler and Paul Zurla, pursuant to Kentucky Revised Statutes § 515.020, (b) for the intentional murder of Paul Zurla, pursuant to KRS § 507.020, and (c) for being a persistent felony offender in the first degree, pursuant to KRS § 532.080. The murder indictment stated that Lucas "shot . . . Paul Zurla with a pistol, causing his death. . . ."

At trial, evidence was presented that a .45 caliber bullet killed Zurla. Wheeler, however, testified that he did not know whether Lucas or Irwin fired the fatal shot. Lucas's entire defense to the murder charge was that he did not shoot Zurla. At the close of the trial, the court gave the jury a form titled "Instructions to the Jury on the Charge of Murder." The instructions stated that the jury could find Lucas guilty if it found that Paul Zurla had been killed in the course of a robbery in which Lucas had participated, and "[t]hat by so participating in that robbery, the Defendant was wantonly engaging in conduct which created a grave risk of death to another and that he thereby caused Paul Zurla's death under circumstances manifesting an extreme indifference to human life." The instructions further stated that "it is immaterial which one of them fired the shot that killed Paul Zurla."

Based upon these instructions, the jury found Lucas guilty of murder. The instruction form was not specific as to the category of the murder charge submitted to the jury. On collateral review of this case, however, the Kentucky Supreme Court acknowledged that wanton murder was the applicable offense. Because conviction of intentional murder requires proof that Lucas shot Zurla, it is a different offense than wanton murder.

At sentencing, the court applied the persistent felony offender statute to enhance Lucas's murder sentence. His counsel did not object to this enhancement.

On direct appeal, Lucas claimed that his counsel was ineffective in failing to object to the sentencing enhancement, and that his convictions of both first degree robbery and of wanton murder constituted unconstitutional double jeopardy. He did not object to the variance between his murder indictment and the jury instructions. All of Lucas's claims on direct appeal were denied. In the state collateral proceedings, the Kentucky courts declined to hear any of Lucas's claims that could have been raised on direct appeal but were not. Again no relief was granted by the Kentucky courts.

Lucas then filed a petition for a writ of habeas corpus in the federal courts pursuant to 28 U.S.C. § 2254. He raised numerous claims, including that (a) the court's jury instruction on wanton murder constituted a constructive amendment to the indictment, (b) the trial court should not have applied a sentence enhancement under Kentucky's "Persistent Felony Offender" statute, (c) his convictions for wanton murder and first-degree robbery exposed him to double jeopardy, and (d) his attorney's failure to raise these errors at trial or in a motion for a new trial constituted ineffective assistance of counsel. Finding that the difference between the indictment for intentional murder and the jury instruction permitting conviction for wanton murder was a "fatal variance" (also known as a "constructive amendment"), the district court granted habeas corpus relief as to that claim. All of the remaining claims were denied. Both Lucas and the Commonwealth of Kentucky have appealed.

## II. ANALYSIS

### A. The "fatal variance"

#### 1. Standard of review

■ In appeals of federal habeas corpus proceedings, we review the district court's legal conclusions *de novo* and its factual findings under a "clearly erroneous" standard. *See Fair v. United States,* 157 F.3d 427, 430 (6th Cir.1998). A habeas petitioner's ineffective assistance of counsel claim is a mixed question of law and fact, for which district-court determinations are subject to *de novo* review. *See Groseclose v. Bell,* 130 F.3d 1161, 1164 (6th Cir.1997) (holding that counsel in capital case was ineffective in failing to have a defense theory, to cross-examine witnesses, or to make a closing argument). Finally, we review the district court's decision applying the "cause and prejudice" rules to the "procedural bar" issues *de novo. See Lusk v. Singletary,* 112 F.3d 1103, 1105 (11th Cir.1997) (holding that it was not necessary to hold a hearing before denying habeas corpus relief on the grounds of a state procedural bar).

#### 2. The constructive amendment

■ A modification at trial that acts to broaden the charge contained in an indictment constitutes reversible error. *See Stirone v. United States,* 361 U.S. 212, 217–19, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) (holding that where the indictment charged that defendant had unlawfully interfered with interstate commerce with respect to the importation of sand from other states by a manufacturer of ready-mix concrete, it was error to charge the jury that the defendant's guilt could be rested either on a finding that the sand had been shipped in interstate commerce or that the concrete would be incorporated into a steel mill which would manufacture articles to be shipped in interstate commerce).

■ There are two types of modifications to indictments—amendments and variances. *See United States v. Ford,* 872 F.2d 1231, 1235 (6th Cir.1989). The court in *Ford* illucidated the difference between them as follows:

As *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of an indictment are left unal-

tered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.

*Id.* (quoting *Gaither v. United States*, 413 F.2d 1061, 1071 (D.C.Cir.1969)) (italics in original).

▬ In *Ford*, the indictment charged the defendant with possession of a firearm on or around a certain date, but the court gave a jury instruction permitting conviction if the jury found that he possessed the firearm over a one-year period. This was held to be a constructive amendment. *See id.* at 1236. A change from the indictment material enough to result in a constructive amendment is also called a "fatal variance." *See, e.g., United States v. Ellis,* 121 F.3d 908, 923 (4th Cir.1997) (holding that where an indictment encompasses the specific legal theory or evidence used at trial, no constructive amendment occurs.). In this case, Lucas was charged with intentional murder, but the jury instructions permitted conviction for wanton murder. This variance is sufficiently material to constitute a constructive amendment.

The court in *Ford* also held that a constructive amendment is *per se* prejudicial error. *See* 872 F.2d at 1235. *See also United States v. Barrow,* 118 F.3d 482, 489 (6th Cir.1997) ("[A] constructive amendment ... is a variance that is accorded the per se prejudicial treatment of an amendment, because, like an actual amendment, it infringes upon the Fifth Amendment's grand jury guarantee.") (internal quotation marks omitted); *United States v. McAnderson,* 914 F.2d 934, 944 (7th Cir.1990) (constructive amendments are *per se* prejudicial because they "deny the defendant his right to a grand jury and hamper the ability to prepare adequately for trial.").

▬ The above cases all were appeals from federal prosecutions and are based upon the Fifth Amendment's requirement that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. CONST. amend. V. As the district court noted in its memorandum opinion, "the federal guarantee of charge by indictment does not apply to the states at all." *See Lucas v. O'Dea,* No. 3:96CV–482–A at 9 (June 18, 1997) (*citing Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)). However, a state prisoner petitioning for habeas corpus relief has a due process right to be informed of the nature of the accusations against him. *See Combs v. Tennessee,* 530 F.2d 695, 698 (6th Cir.1976) (holding that the defendant, who was convicted of raping a child, was not prejudiced where Tennessee had separate statutes for rape and for "carnally knowing" a child, but not for rape of a child. The indictment had charged the defendant with both offenses, the nature of the crime was clear, and the defendant was not misled or surprised by the change of language from the indictment to the jury's verdict).

In the present case, the district court held that as a result of the fatal variance between the indictment and the jury instruction, Lucas had insufficient notice of the charges against him and was deprived of any defense. Lucas was charged with intentional murder. The indictment stated that "he shot ... Paul Zurla with a pistol, causing his death...." The jury was instructed, however, that "it is immaterial which one of them fired the shot that killed Paul Zurla." As the district court noted, this variance was devastating to Lucas's defense:

> [I]t is clear that [Lucas] was prejudiced, given that his defense to the murder charge was that he was not the one who shot Zurla. Given the form in which the case was delivered to the jury, this wound up being no defense at all.

Because it exposed Lucas to charges·for which he had no notice and thus no opportunity to plan a defense, the variance from the indictment to the jury instruction constituted a constructive amendment that deprived him of his Fourteenth Amendment right to notice of the charges against him. *See Combs,* 530 F.2d at 698 (holding that

"[s]uch definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial.").

### 3. The "procedural bar"

In the absence of "cause" and "prejudice," federal courts are barred from undertaking a habeas corpus review of state-court decisions that rest on independent and adequate state grounds. *See Wainwright v. Sykes,* 433 U.S. 72, 82, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (holding that a Florida rule requiring that the petitioner's confession be challenged at trial or not at all was an adequate state ground for barring a claim on habeas corpus that the petitioner's confession should not have been admitted into evidence). State procedural rules, such as Kentucky's requirement that all claims of fatal variance be addressed on direct appeal, constitute such independent and adequate state grounds. *See Coleman v. Thompson,* 501 U.S. 722, 744, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (holding that counsel's failure to file a timely notice of appeal in state court was an adequate state ground for denying a petitioner's habeas corpus claims). If a petitioner procedurally defaults on a claim in state court, federal courts will deny review of that claim on habeas corpus unless the petitioner can demonstrate "cause" for the procedural default and actual "prejudice" resulting from the constitutional error. *See id.* at 750, 111 S.Ct. 2546.

When Lucas collaterally attacked his conviction in the Kentucky courts, the Kentucky Court of Appeals declined to address the issue of the fatal variance because the issue "could and should have been raised on direct appeal." Lucas's failure to raise the fatal variance on direct appeal thus constituted a procedural default. Unless Lucas can demonstrate that there was a justifiable reason for his default and that the jury instruction had a prejudicial effect on the effectiveness of his defense, he is not entitled to a review of the constructive amendment claim in federal court. *See id.* at 754, 111 S.Ct. 2546 (stating that habeas petitioners carry the burden of demonstrating cause and prejudice in order to overcome procedural default).

### 4. Ineffective assistance of counsel

Attorney error that amounts to ineffective assistance of counsel can constitute "cause" under the cause and prejudice test. *See Gravley v. Mills,* 87 F.3d 779, 785 (6th Cir.1996) (holding that defense counsel's failure to object to very serious prosecutorial misconduct amounted to ineffective assistance of counsel, and that such ineffective assistance was "cause" for the defendant's failure to comply with Tennessee's rules for preserving a claim of prosecutorial misconduct). In order to constitute sufficient cause to overcome the procedural default, a counsel's performance must be constitutionally deficient. *See id.* at 785.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court set forth a two-part test for determining whether the performance of counsel is constitutionally deficient. First, a defendant must show that counsel's errors were so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *See id.* at 687, 104 S.Ct. 2052. Failure to object to a jury instruction can constitute such a grave error. *See Gray v. Lynn,* 6 F.3d 265, 269 (5th Cir.1993) (holding that "the failure by [defendant's] counsel to object to the erroneous instruction in question cannot be considered to be within the wide range of professionally competent assistance.") (internal quotation marks omitted).

Second, a defendant asserting an ineffective assistance of counsel claim must generally show that defense counsel's deficient performance prejudiced the defense. *See Strickland,* 466 U.S. at 691–92, 104 S.Ct. 2052. *See also Wong v. Money,* 142 F.3d 313, 319 (6th Cir.1998) (holding that

the decision not to present an insanity defense did not constitute ineffective assistance of counsel). To show "prejudice" under *Strickland*, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

▉ As the district court noted, the failure of Lucas's counsel to object to the jury instructions in question rendered his defense—that he did not shoot Zurla—meaningless. When deciding cases arising within the federal court system, this court has held that constructive amendments to an indictment are *per se* prejudicial, warranting reversal. *See Ford*, 872 F.2d at 1235. We need not decide whether this *per se* principle is applicable to the habeas corpus review of cases arising from state courts, however, because we conclude that the instruction in the present case had the effect of directing a verdict of "guilty" on the murder charge. In light of the failure of Lucas's attorney to address the fact that the constructive amendment was constitutionally impermissible, we find that (1) his performance fell below the level of competence required by *Strickland*, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

▉ The Commonwealth asserts, however, that ineffective assistance of counsel as defined in *Strickland* is not sufficient cause to overcome Lucas's procedural default. It relies on *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), in which the Supreme Court held that a federal habeas petitioner cannot show cause that would excuse a procedural default by establishing attorney error short of ineffective assistance of counsel. The Court stated that, where counsel is otherwise competent under *Strickland*, petitioners will ordinarily have to demonstrate that some factor external to the

defense prevented their complying with the procedural requirement in order to overcome a procedural default. *See Murray*, 477 U.S. at 488, 106 S.Ct. 2639.

▉ The Commonwealth's reliance on *Murray* is misplaced, however, because *Murray* applies only when a habeas petitioner does not claim that counsel's performance was so deficient as to constitute ineffective assistance of counsel. *See id.* at 506, 106 S.Ct. 2639. Rather, *Murray* applies to those circumstances in which an attorney's error does not rise to that level. Ineffective assistance of counsel is not established by all errors, but rather by errors so serious that the defendant is not receiving the counsel guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. We conclude that the failure of Lucas's attorney to raise the fatal variance argument on direct appeal was sufficiently serious as to deprive Lucas of such counsel. Thus Lucas need not show that some external factor caused his attorney to be unable to comply with Kentucky's procedural requirements. The district court therefore properly granted habeas corpus relief on Lucas's claim that there was a fatal variance between the indictment and the jury instructions.

**B. The district court did not err when it denied Lucas's claim that his counsel's failure to object to the sentence enhancement constituted ineffective assistance of counsel**

▉ Lucas's murder sentence was enhanced under Kentucky's persistent felony offender statute, KRS § 532.080. This statute applies to all class "A" felonies. In *Berry v. Commonwealth*, 782 S.W.2d 625 (Ky.1990), the Kentucky Supreme Court held that murder is a capital offense, not a class "A" felony, and is therefore to be treated differently than other crimes for enhancement purposes. Specifically, *Berry* held that because capital offenses are subject to their own sentencing statute,

the persistent felony offender enhancement does not apply. *See id.* at 626–27.

■ When Lucas was convicted in 1988, *Berry* had not yet been decided. That fact, however, is not necessarily dispositive as to whether his counsel was ineffective. Rather, counsel's failure to raise an issue whose resolution is clearly foreshadowed by existing decisions might constitute ineffective assistance of counsel. *See Government of the Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir.1989) (holding that a trial attorney's failure to object to raciallybased peremptory challenges in a rape case was ineffective assistance of counsel, even though *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which found such challenges unconstitutional, had not yet been decided). "Only in a rare case" will a court find ineffective assistance of counsel based upon a trial attorney's failure to make an objection that would have been overruled under the then-prevailing law. *See Brunson v. Higgins,* 708 F.2d 1353,1356 (8th Cir.1983) (holding that counsel's failure to anticipate the striking down of a jury selection system that excluded women was not ineffective assistance).

The district court found that *Berry* was not foreshadowed by then-existing Kentucky case law. In particular, it cited, *Offutt v. Commonwealth,* 799 S.W.2d 815 (Ky.1990), in which the Kentucky Supreme Court clarified its holding in *Berry.* In *Offutt,* the court stated that the law prior to *Berry* had been in a "curious state." *See id.* at 816. In particular, the court noted that the sentencing scheme for persistent felony offenders was complicated by changes in murder sentencing, because murder had originally carried a mandatory death sentence. *See id. Offutt,* decided two years after Lucas's conviction, demonstrates that a solution to the persistent felony offender sentencing issue was not plainly foreshadowed by existing Kentucky decisions. Quite to the contrary, the case demonstrates that the Kentucky courts continued to grapple with the problem of

persistent felony offender sentencing well after Lucas was tried. The district court therefore correctly held that this was not one of those "rare cases" for finding counsel ineffective because he failed to anticipate a development in the law.

## C.  Double jeopardy

Because we have affirmed the district court's grant of habeas corpus relief as to Lucas's murder conviction, his conviction of first-degree robbery no longer presents a double jeopardy problem. We therefore decline to delve into the question of whether Lucas's convictions for wanton murder and first-degree robbery pass the "same elements" test as set forth in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (requiring the court to determine whether each charged offense "requires proof of an additional fact which the other does not").

## III.  *CONCLUSION*

For all of the reasons stated above, we **AFFIRM** the judgment of the district court.