**William H. ASHLEY, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

No. 99–3750.

United States Court of Appeals, Sixth Circuit.

Aug. 16, 2001.

Before RYAN and BATCHELDER, Circuit Judges; LAWSON, District Judge.*

RYAN, Circuit Judge.

The petitioner, William H. Ashley, appeals the district court's denial of his *pro*

---

* The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

*se* petition, brought pursuant to 28 U.S.C. § 2255, asking the court to vacate his conviction and sentence. We will affirm.

## I.

On September 20, 1990, following a federal jury trial, Ashley was convicted of conspiracy, armed bank robbery, and the use of firearms in connection with crimes of violence. After being sentenced to an aggregate term of 33 years in confinement, Ashley appealed the conviction and sentence, arguing that the district court erroneously admitted "other acts" evidence in violation of Fed.R.Evid. 404(b), and that there was insufficient evidence to support his conspiracy conviction. This court affirmed the conviction and sentence. *See United States v. Ashley,* No. 91–3108, 1991 WL 169335 (6th Cir. Sept. 4, 1991) (unpublished disposition).

On April 25, 1997, Ashley filed a petition pursuant to 28 U.S.C. § 2255 challenging his conviction and sentence by raising claims relating to the performance of his court-appointed trial counsel, Keith Yeazel, and his appellate counsel. The district court issued an opinion denying all of Ashley's claims except those relating to Yeazel's alleged failure to communicate a plea offer and refusal to allow Ashley to testify on his own behalf.

A magistrate judge held an evidentiary hearing on September 4, 1998. Ashley testified that Yeazel had never advised him of the government's plea offer because if Yeazel had, Ashley would have taken it. Ashley also testified that he had asked Yeazel several times if he could testify on his own behalf, but Yeazel repeatedly put him off and told him to wait and see what happened. Tammy Dennis, Ashley's ex-girlfriend, testified that she had a telephone conversation with Yeazel in which she asked him if Ashley would be testifying at trial, and Yeazel responded that it would "not be necessary" or it would "not be a good idea."

The *habeas* record was supplemented with a video deposition of Matthew Hayhow, taken on October 15, 1998, at the Federal Correctional Institution in Cumberland, Maryland. Hayhow was also represented by Yeazel, but his case did not go to trial because he accepted the plea agreement offered by the government. According to Hayhow, Yeazel told him that he had erred in failing to inform Ashley of a similar plea offer made in Ashley's case and wanted to avoid making the same mistake in Hayhow's case.

The sole witness for the government was Yeazel. Yeazel testified that he had represented approximately 20 federal criminal defendants before being appointed to represent Ashley, but that Ashley's case had been the first to go to trial because Yeazel's other clients had all accepted the offered plea agreements. Yeazel contends that he always informed clients of plea offers and that he told Ashley about the plea offer, but Ashley had refused to accept it. Yeazel also testified that he asked Ashley if he wanted to testify and Ashley "shook his head no." However, Yeazel admitted that he did not have any written record of his communications to Ashley relating either to the plea offer or his willingness to allow Ashley to testify.

The magistrate judge issued a report and recommendation on February 2, 1999, recommending that the district court dismiss Ashley's petition, which the district court adopted on May 15, 1999.

## II.

In federal *habeas corpus* proceedings, this court reviews the district court's legal conclusions *de novo* and factual findings under a clearly erroneous standard. A *habeas* petitioner's ineffective assistance of counsel claim is a mixed

question of law and fact, which is subject to *de novo* review. *Lucas v. O'Dea,* 179 F.3d 412, 416 (6th Cir.1999).

### III.

According to Ashley, he first learned of the government's plea offer when he asked Yeazel on the third day of his trial whether an offer had been made, to which Yeazel responded, "yes, they did." Ashley argues that if he had been aware of the offer, he would have accepted it and his sentence would have been reduced by 20 years, from 33 years to 13 years. Ashley contends that because Yeazel never communicated the plea offer and has no written documentation showing that he did so, Yeazel's representation was constitutionally ineffective and this court should reverse the district court's judgment and remand the case for a new trial. Ashley also argues that Yeazel repeatedly "put off" talking to him about his right to testify, which is corroborated by Dennis's testimony that Yeazel told her it would "not be a good idea" for Ashley to testify.

The government maintains that Yeazel was not constitutionally ineffective because he informed Ashley of both the plea offer and his right to testify. Ashley did not raise his ineffective assistance of counsel claim on direct appeal or in the disciplinary complaint he filed against Yeazel with the Ohio Supreme Court in November 1990. In fact, Ashley never explains why he waited almost seven years after his conviction to raise a claim involving Yeazel's alleged ineffectiveness.

Yeazel testified that he has never failed to inform a client of a plea offer, and that he "probably would have informed [Ashley] within the first month of [his] representation. Plea agreements are normally reached in these types of cases." Specifically, Yeazel contends that he communicated the plea offer to Ashley while visiting him at the Franklin County Jail:

I remember, because it's happened on a number of occasions. Mr. Ashley would sit there, and he would sort of just grin at me and just shake his head. And I believe that in this particular instance he would have told me, no, they've got to prove that I'm guilty.

Also, Yeazel testified that he discussed Ashley's right to testify with him prior to trial and Ashley refused. Yeazel stated:

Again, he just sort of looked at me and grinned and shook his head no. And I remember sitting there at one of those big tables in Judge Kinneary's courtroom when that happened. And I think that was after the Government had closed its case-in-chief and had rested, and before our case opened, as to whether or not he was going to testify.

Because Ashley filed his petition pursuant to 28 U.S.C. § 2255, he has the burden of persuading the court by a preponderance of the evidence that his version of the disputed events is more likely true. *See Lema v. United States,* 987 F.2d 48, 51 (1st Cir.1993). Failure to communicate a plea offer to a client may constitute ineffective assistance of counsel. *See Tyler v. United States,* No. 98–1225, 1999 WL 427377, at *2 (6th Cir. June 16, 1999) (unpublished disposition).

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court articulated the appropriate test for determining the effectiveness of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to

deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

When elaborating on the "prejudice" prong of this test, the *Strickland* Court stated:

It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding. . . .

.      .      .      .      .

. . . [T]he appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution, and in the test for materiality of testimony made unavailable to the defense by Government deportation of a witness. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 693–94 (citations omitted).

■ As noted by the magistrate judge, "There is little, if any, direct evidence to support testimony on behalf of either party." Ashley had the burden of proof to persuade the court that his version of the disputed events was more likely true. Ashley relies extensively on the fact that no written record exists in Yeazel's file indicating that he communicated the plea offer to Ashley or that he told him of his right to testify on his own behalf. While attorneys would be well advised to note significant communications with clients in their files, particularly in this era of an ever increasing number of *Strickland* claims and bar complaints, the absence of

such documentation does not constitute *per se* ineffectiveness.

We are not persuaded that the factual findings of the magistrate judge, which were adopted by the district court, were clearly erroneous. In summary, the magistrate judge did not clearly err in concluding that "Ashley did not meet his burden of demonstrating by a preponderance of the evidence that his trial counsel failed to communicate a plea offer to him or that he was denied his right to testify on his own behalf."

### IV.

For the foregoing reasons, the district court's denying Ashley's *habeas corpus* petition under 28 U.S.C. § 2255 is **AFFIRMED.**