**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0741n.06**
**Filed: August 24, 2005**

**04-5469**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ROY LANE, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| HOWARD CARLTON, warden, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Respondent-Appellee. | ) | |

Before: NORRIS and DAUGHTREY, Circuit Judges, and MARBLEY,[*] District Judge.

PER CURIAM. The petitioner, Roy Lane, appeals from the district court's denial of his petition for a writ of habeas corpus. We issued a certificate of appealability as to four issues, only two of which Lane now pursues on appeal. Specifically, he alleges that his conviction for first-degree murder and the resulting life sentence should be vacated because jury instructions given at trial on the issues of malice and premeditation unconstitutionally relieved the prosecution of the burden of proving elements of the charged offense beyond a reasonable doubt. We disagree and affirm.

---

[*]The Hon. Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1989, Lane was charged with the murder of his former wife, Earlena. According to the undisputed facts underlying the appeal, Lane drove his truck to Earlena's home on angered that she had been vacationing with another man and, according to Lane, neglecting the children Lane and Earlena had together. As recounted by the Tennessee Court of Criminal Appeals in its direct review of the petitioner's conviction:

> Lagatha France, a neighbor, testified that [Lane] pulled up next to the victim's car and began shooting. Ms. France stated that first he fired two shots, then there was a pause and then four more shots were fired. . . . Alisa Chambers, a neighbor, heard a gunshot, looked out and saw the victim fall to the ground. She then saw [Lane] kick her, shoot her again, and then kick her. Ms. Chambers heard the woman beg for her life before [Lane] shot her several more times. He then picked up her body, put it in his pickup truck and drove slowly away.
>
> Richard Gunter, another neighbor, testified that he also looked out the window of Alisa Chambers and saw the same episode. He observed [Lane] reload his pistol and continue shooting bullets into the prostrate woman in a very calm manner. He also heard the woman plead, but stated that [Lane] did not stop shooting her, except to kick her and reload the gun.

Additional trial testimony established that Lane was stopped by law enforcement authorities shortly after he drove away from the crime scene. When confronted by the police, Lane claimed to have been driving Earlena to the hospital, even though he was headed in the opposite direction from the hospital at the time.

Prior to submitting the case to the jury for decision, the state trial judge instructed the finders-of-fact on the applicable law, including the concepts of malice and premeditation. In doing so, he charged:

If a deadly weapon is handled in a manner so as to make the killing a natural or probable result of such conduct, then you may infer malice sufficient to support a conviction. Of Murder in the First Degree. But again, this inference may be rebutted by either direct or circumstantial evidence, or may . . . or by both. Regardless of whether the same may be offered by the defendant, or exists in the evidence of the state.

* * * * *

You are reminded that the [state] always has the burden of proving every element of the crime charged beyond a reasonable doubt. A permissible inference may or may not be drawn from an elemental fact from the proof. By the state of a basic fact. However all the inferences permitted to be drawn may be rebutted. An inference does not place any burden of proof of any kind upon the defendant.

Pre-meditation means the intent to kill must have been formed prior to the act itself. Such intent or design to kill may be conceived and deliberately formed in an instant. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. It is sufficient that it preceded the act, however short the interval. The mental state of the accused at the time he allegedly instigated the act, which resulted in the alleged death of the deceased must be carefully considered in order to determine the accused was sufficiently free from excitement and passion as to be capable of pre-meditation.

Passion does not always reduce the crime below murder in the first degree, since the person may deliberate, may pre-meditate, and may intend to kill after pre-meditation and deliberation although prompted and to a large extent controlled by passion at the time. If the design to kill was formed with deliberation and pre-meditation it is immaterial that the accused may have been in a passion, or an excited state when the design was carried into effect.

After considering these and other instructions, as well as the evidence and testimony adduced at trial, the jury found Lane guilty of first-degree murder and sentenced him to life imprisonment. The petitioner then availed himself of the various direct and post-conviction appeal options allowed under Tennessee law. Failing to obtain the relief he desired, however, Lane eventually filed a habeas corpus petition in federal court. The district judge denied relief on all grounds, specifically concluding that the challenged malice instruction involved merely a permissive inference, not a mandatory presumption, and that the challenge to the trial court's premeditation charge was

grounded in state law and, therefore, not cognizable in a habeas corpus claim. On appeal, Lane

challenges the two jury instructions involving malice and premeditation.

## DISCUSSION

### A. Standard of Review

Lane filed his petition for issuance of the writ of habeas corpus on April 7, 2003, well after

the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA), Pub.L.No. 104-132, 110 Stat. 1214 (1996). Consequently, the provisions of that act

govern the resolution of this dispute. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Greer v.*

*Mitchell*, 264 F.3d 663, 671 (6th Cir. 2001). Pursuant to the provisions of AEDPA, a federal court

may not grant the writ unless the state court adjudication on the merits either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
> (2) resulted in a decision that was based upon an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As explained by the United States Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 412-

13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by this Court on a question of
> law or if the state court decides a case differently than this Court has on a set of
> materially indistinguishable facts. Under the "unreasonable application" clause, a
> federal habeas court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

In deciding whether a state court ruling involved an "unreasonable application" of federal law, a habeas court does not focus merely upon whether the state court decision was erroneous or incorrect; rather, a federal court may issue a writ of habeas corpus only if the state court's application of clearly-established federal law was objectively unreasonable. *See id.* at 409-11. Furthermore, "[t]his court reviews a district court's legal conclusions in a habeas proceeding *de novo* and its factual findings for clear error." *Greer*, 264 F.3d at 671 (citing *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999).

## B. Malice Instruction

The due process provisions of the Fourteenth Amendment to the United States Constitution forbid any state from shifting to a criminal defendant the burden of disproving an element of the crime with which the individual is charged. *See Mullaney v. Wilbur*, 421 U.S. 684 (1975); *In re Winship*, 397 U.S. 358 (1970). In his first issue on appeal, Lane contends that the instruction given by the trial judge allowing the jury to infer malice "[i]f a deadly weapon is handled in a manner so as to make the killing a natural or probable result of such conduct" unconstitutionally removed from the prosecution the necessity of establishing an element of the offense beyond a reasonable doubt.[1]

In *Sandstrom v. Montana*, 442 U.S. 510, 523-24 (1979), the United States Supreme Court confirmed that *presumptions*, whether conclusive or merely burden-shifting, deprive a defendant of

---

[1]The warden asserts that this challenge has been procedurally defaulted by the petitioner's failure to raise the issue of improper jury instructions in the Tennessee appellate courts. The warden himself, however, failed to advance his procedural default argument in the district court. In any event, Lane did in fact submit his jury instruction claims to the state appellate courts at every opportunity after obtaining new counsel who challenged the effectiveness of his trial counsel.

due process by casting upon him the responsibility of *dis*proving an element of a charged offense. In *Francis v. Franklin*, 471 U.S. 307, 314 (1985), however, the Court recognized that permissive *inferences* generally do not suffer from the same constitutional infirmity. "A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." *Id.* Nevertheless, a permissive inference will be found to violate due process principles "if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Id.* at 314-15 (citing *Ulster County Court v. Allen*, 442 U.S. 140, 157-63 (1979)). Thus:

> Analysis must focus initially on the specific language challenged, but the inquiry does not end there. If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole. Other instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption.

*Id.* at 315.

In this case, the challenged language itself is cast in a decidedly non-mandatory vein. Not only did the jury instruction use the words "may" and "infer," but the trial court continued by informing the finders-of-fact that the inference "may be rebutted by either direct or circumstantial evidence," whether offered by the State or by the defendant. The charge also reminded the jurors that the state "always has the burden of proving every element of the crime charged beyond a reasonable doubt," that an inference never places a burden of proof upon the defendant, and that the jurors are not even required to draw the inference at issue. In short, in conjunction with more

general jury instructions concerning the presumed innocence of the defendant, the precautions taken by the state trial judge to allocate properly the burden of proof in this prosecution ensured that Lane's due process rights were not abrogated by the malice instruction included in the jury charge. The district court thus properly denied the petitioner relief on this ground.

## C. Premeditation Instruction

In his remaining appellate issue, Lane also suggests that his due process rights were violated when the state court informed the jury that the element of premeditation necessary to convert a homicide into murder could be formed in an instant. In dismissing this claim, the district court noted that the petitioner relied upon *State v. Brown*, 836 S.W.2d 530 (Tenn. 1992), in support of his position. Quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 n.2 (1991), the district judge noted that because "'state law violations provide no basis for federal habeas relief,' the issue involving the 'premeditation' jury charge is not a cognizable habeas corpus claim."

Although Lane did indeed cite to the Tennessee Supreme Court's decision in *Brown*, his pro se filings also invoked the Fifth and Fourteenth Amendments to the United States Constitution in alleging that his "conviction was obtained in the absence of proof beyond a reasonable doubt of every essential element of the offense, in violation of his due process rights and his right to a fair trial." Thus, the petitioner's assertion that his crime was one of passion, not premeditation, can be viewed as an invocation of federal constitutional rights sufficient to allow the exercise of the federal courts' habeas corpus jurisdiction.

Nevertheless, although the charge did contain a statement indicating that the "intent or design to kill may be conceived and deliberately formed in an instant," the jury instructions, considered in

their entirety, sufficiently and explicitly convey the principle that Lane's mental state, at the time of the crime, must have been "sufficiently free from excitement and passion as to be capable of pre-meditation." Indeed, in requiring the prosecution to prove all elements of the crime beyond a reasonable doubt, not only did the charge provide that premeditation to kill be formed by a mind free from excitement and passion, but the trial judge also instructed the jury that the design to kill must, in all instances, be formed with deliberation and pre-meditation. By so coupling the concept of premeditation with the deliberation necessary to distinguish first-degree murder from other homicides, the instruction complies with constitutional principles. There is, therefore, no substantive merit to Lane's jury charge challenge in this regard.

## CONCLUSION

The jury instructions given by the trial judge in Lane's case sufficiently informed the finders-of-fact concerning their constitutional duties in considering whether the homicide committed by Lane was accompanied by the malice and the premeditation necessary to convert the killing into first-degree murder. We therefore AFFIRM the judgment of the district court denying the petitioner's request for habeas corpus relief, although on slightly different bases than those set out in the district court's memorandum opinion.