NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0907n.06

Nos. 13-3808/3809

**FILED**

Dec 08, 2014

DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LAURICE GILBERT, | ) | |
| | ) | |
| Petitioner-Appellant/Cross-Appellee | ) | **ON APPEAL FROM THE** |
| (13-3808 & 13-3809), | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE** |
| **v.** | ) | **NORTHERN DISTRICT OF** |
| | ) | **OHIO** |
| TERRY TIBBALS, Warden, | ) | |
| | ) | |
| Respondent-Appellee/Cross-Appellant | ) | **OPINION** |
| (13-3808 & 13-3809). | ) | |

_____

BEFORE: BATCHELDER, GILMAN, and GIBBONS, Circuit Judges

**ALICE M. BATCHELDER**, **Circuit Judge.** In 2007, an Ohio jury convicted Laurice Gilbert on two counts of aggravated murder (including one for felony murder premised on aggravated robbery) and on two aggravated-robbery counts. On direct appeal, the Ohio Court of Appeals reversed Gilbert's conviction on one count of aggravated robbery, after finding that the trial judge had failed to instruct the jury properly on the mens rea required for that count, but affirmed his conviction on the remaining counts. Gilbert sought federal habeas relief pursuant to 28 U.S.C. § 2254 on the remaining counts. Although it denied his other grounds for relief, the district court reversed Gilbert's conviction on the felony-murder count because it was unclear whether the jury premised its verdict on the aggravated-robbery count that remained or the one that had been overturned. Gilbert now appeals the denial of his claim of ineffective assistance of

1

counsel, and the Warden cross-appeals the district court's granting of habeas relief on the felony-

murder count. For the reasons that follow, we AFFIRM the district court's denial of habeas

relief on Gilbert's ineffective-assistance-of-counsel claim and REVERSE the district court's

granting of the writ on the felony-murder count.

**I.**

The Ohio Court of Appeals accurately summarized the facts of this case:

[O]n October 11, 2006 . . . , Dontay Minor, the victim, was shot to death while visiting an apartment in Cleveland. The apartment was the home of Davita Moton, who lived there with her five-year-old son and her boyfriend, Alan Davis.

{¶ 4} That morning, the victim arrived at the apartment and was playing video games with Davis. Moton was also home, but her son was at school. Gilbert arrived a little while later. All of the individuals present were friends.

{¶ 5} That afternoon, Moton left the apartment to get her son from school. Gilbert also left to pick up another friend, Jamie Byrd. Gilbert eventually returned to Moton's apartment with Byrd. On the way, Gilbert told Byrd that he had to go and pick up his money.

{¶ 6} When Gilbert and Byrd arrived at the apartment, Davis and the victim were present. Byrd began playing a video game, and Gilbert was having a conversation with the victim.

{¶ 7} Davis testified that he heard Gilbert say to the victim "cause I need that" and "you can't leave me f* * * *d up like that," and that Gilbert kept saying "just give me my s* * *." Davis heard the victim say that he didn't have anything and observed the victim take off his shoes and empty his pockets to display that nothing was in them. Davis then heard the victim say, "I see you got your little gun. I don't know if you gonna shoot me or pistol-whip me or whatever you gonna do." When Davis turned to look, he saw that Gilbert was brandishing a gun in the victim's direction. Davis ran to the porch and heard gunshots.

{¶ 8} Byrd testified that he was playing a video game, that Gilbert and the victim were having a conversation, that he heard gunshots, that he ran to the porch with Davis, and that he heard more shots. After hearing the door open and close, Byrd ran out of the apartment.

. . . .

{¶ 10} The victim suffered multiple gunshot wounds and died on the scene. He was found to have approximately $2,000 in cash in the seat of his boxer shorts.

{¶ 11} Approximately two hours after the shooting, Gilbert purchased a one-way ticket to Los Angeles. He was apprehended in Los Angeles approximately six months later.

*State v. Gilbert*, No. 90615, 2009 WL 270522, at *1–2 (Ohio Ct. App. Feb. 5, 2009).

Gilbert was indicted on four counts in 2006. Count One charged aggravated murder, defined as causing the death of another purposely and with prior calculation and design. Count Two charged aggravated murder, more commonly known as felony murder, defined as purposely causing the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, aggravated robbery. Count Three charged aggravated robbery, defined as having a firearm/gun on or about the person or under control and either displaying, brandishing, indicating possession of, or using the weapon in attempting or committing a theft offense or in fleeing immediately after the attempt or offense. Count Four charged aggravated robbery, defined as inflicting or attempting to inflict serious physical harm on an individual while attempting or committing a theft offense or in fleeing immediately after the attempt or offense.

The jury found Gilbert guilty on all counts, and the court sentenced him to concurrent sentences of thirty years to life imprisonment on each of the aggravated-murder counts, and eight years' imprisonment on each of the aggravated-robbery counts. The court also imposed three-year terms for firearm specifications that merged with and were consecutive to these base terms. In total, Gilbert's aggregate sentence was imprisonment for thirty-three years to life.

On direct appeal, the Ohio Court of Appeals reversed Gilbert's conviction on the Count Four aggravated-robbery charge because the trial judge had failed to instruct the jury properly on the mens rea required for conviction on that count. *Gilbert*, 2009 WL 270522, at *5. The court affirmed Gilbert's conviction on all other counts. *Id.* The Ohio Supreme Court summarily affirmed. *State v. Gilbert*, 919 N.E.2d 737 (Ohio 2009).

In 2011, Gilbert filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising several grounds for relief. In relevant part, he claimed that his trial counsel was

ineffective for failing to seek a specific jury instruction on unanimity as to the offense conduct. Further, he contended that Count Two (felony murder) should be dismissed because Count Four, one of the aggravated-robbery counts, was dismissed on appeal as structurally flawed, and there is no assurance that the petit jury did not use Count Four as the predicate for the felony-murder conviction. The district court granted Gilbert's petition with regard to the felony-murder count, but denied the petition on all remaining grounds. The district court granted a Certificate of Appealability pursuant to 28 U.S.C. § 1915(a)(3) on two issues: (1) the ineffective-assistance-of-counsel claim, and (2) the felony-murder claim. Gilbert appeals the former, and the Warden appeals the latter.

## II.

We review de novo a district court's legal conclusions and mixed questions of law and fact, and review its factual findings for clear error. *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a district court may not grant a habeas petition with respect to any claim that was adjudicated on the merits in the state courts unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court reaches a decision different from that of the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the

petitioner's case. *Id.* In analyzing whether a state court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, a federal court may look only to "the holdings, as opposed to dicta," of the Supreme Court's decisions. *Howes v. Fields*, 132 S. Ct. 1181, 1187 (2012) (quoting *Williams*, 529 U.S. at 412).

To obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). This standard, we were recently reminded by the Supreme Court, is "difficult to meet." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013)) (internal quotation marks omitted). Further, in the context of ineffective-assistance-of-counsel claims under *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court has stated that if AEDPA review is a difficult standard to meet, "that is because it was meant to be." *Harrington*, 131 S. Ct. at 786. "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "the standards created by *Strickland* and § 2254(d) are both highly deferential," and, "when the two apply in tandem, review is doubly so." *Id.* at 788 (internal citations and quotation marks omitted). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable"; instead, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

**A.**

Gilbert's claim on appeal is that the district court erred by rejecting his claim for ineffective assistance of counsel based on his trial counsel's failure to request a jury instruction on particularized unanimity. Because Counts One, Two, and Three "could be committed in a

myriad of different ways," Gilbert argues the trial court should have instructed the jurors that unanimity was required on the particular means of commission. The Supreme Court outlined the test for a claim of ineffective assistance of counsel in *Strickland v. Washington*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. The Ohio Court of Appeals rejected all of Gilbert's ineffective-assistance-of-counsel claims because it did not find that "any of the claimed deficiencies were prejudicial to Gilbert. Furthermore, even if we were to consider counsel's performance as deficient in regard to the claimed errors, we do not find that they rose to the level, individually or cumulatively, that the result of Gilbert's trial would have been different." *Gilbert*, 2009 WL 270522, at *11. The district court held that the state court's application of *Strickland* was not unreasonable because Gilbert had not shown any deficient performance.

To show that the state court's decision was an unreasonable application of *Strickland*, Gilbert cites *Richardson v. United States*, 526 U.S. 813 (1999), and *Schad v. Arizona*, 501 U.S. 624 (1991), for the proposition that the state denies a defendant due process when the defendant is convicted without a sufficient meeting of the minds regarding the offense conduct. He further cites *State v. Johnson*, 545 N.E.2d 636 (Ohio 1989), to show that Ohio state law would require an instruction on unanimity in these circumstances had trial counsel requested one. Read together, Gilbert believes these cases show that his counsel's performance was deficient based on

6

his contention that federal law allows an instruction on jury unanimity and that Ohio law requires one.

Gilbert's argument, however, relies on misapprehensions of both federal and state law. Although *Richardson* and *Schad* could form the basis for an objection based on the lack of a unanimity instruction in certain circumstances, they are not categorical in their analyses. Instead, both cases distinguish between "continuing series of violations" offenses and "alternative means" offenses. A jury must "unanimously agree not only that the defendant committed some 'continuing series of violations' but also that the defendant committed each of the individual 'violations' necessary to make up that 'continuing series.'" *Richardson*, 526 U.S. at 815. In contrast, "[w]here, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude he used a gun." *Id.* at 817. This "disagreement about means" is irrelevant "as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely that the defendant had threatened force." *Id.*

Similarly, the Court in *Schad* stated that it has "never suggested that in returning general verdicts . . . the jurors should be required to agree upon a single means of commission." 501 U.S. at 631. Rather, "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line." *Id.* at 631–32 (internal quotation marks omitted). "Plainly there is no general requirement that the jury reach agreement on preliminary factual issues which underlie the verdict." *Id.* at 632.

Ohio law tracks *Richardson* and *Schad*. "In determining whether the state has impermissibly interfered with a defendant's . . . right to juror unanimity . . . , the critical inquiry is whether the case involves 'alternative means' or 'multiple acts.'" *State v. Gardner*, 889

N.E.2d 995, 1005 (Ohio 2008). In an alternative-means case, unanimity is not required "as to the means by which the crime was committed so long as substantial evidence supports each alternative means." *Id.* "In a multiple acts case, on the other hand, several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime." *Id.* at 1005–06.

Although Gilbert is correct that *Johnson* requires a jury instruction on unanimity for a count that can be divided into "distinct conceptual groupings," the court there held that a count strikingly similar to Gilbert's counts involved alternative means and thus did not warrant an instruction. *Johnson*, 545 N.E.2d at 644–45. Although the defendant in that case argued that he could have been convicted by less than a unanimous jury since "some of the jurors could have found that he murdered [the victim] while committing aggravated robbery, some that he murdered her while attempting to commit aggravated robbery, some that he murdered her while fleeing immediately after attempting aggravated robbery," the court found the conviction to be appropriate because "each juror still would have agreed that the appellant had murdered [the victim] in conjunction with at least attempting to commit aggravated robbery, and this alone would have been adequate to sustain the conviction." *Id.* at 644–45.

Gilbert's argument boils down to his belief Counts One, Two, and Three each clearly features "distinct conceptual groupings" and thus any counsel would be ineffective for failing to object to the lack of a unanimity instruction under either federal or state law. The cases he cites, however, merely beg the question; rather than provide analysis on whether these counts in fact involve distinct conceptual groupings, they simply outline the requirements for counts already determined to feature distinct conceptual groupings. *Johnson*, the state-law case on which Gilbert heavily relies, analyzes similar counts in terms of alternative means, not distinct

conceptual groupings. At best, therefore, the counts against him are ambiguous as to whether they involve alternative means or distinct conceptual groupings; at worst, they are clearly alternative means. Either way, it would not be deficient performance by his trial counsel not to object to the lack of a unanimity instruction given the counts against him.

Gilbert thus fails both prongs of *Strickland*'s test for ineffective assistance of counsel. Both clearly established Supreme Court precedent and Ohio law support the proposition that the offenses charged in Counts One, Two, and Three are offenses involving alternative means, and such offenses do not require a jury instruction on particularized unanimity. It is therefore not at all clear that such an instruction would have been available to Gilbert had his counsel sought one; hence the failure to seek the instruction or to object to its omission did not prejudice him. Reviewing this claim, as we must, under AEDPA's doubly deferential standard, we find no merit to the claim of ineffective assistance of counsel.

**B.**

The Warden cross-appeals the district court's granting of habeas relief to Gilbert on the felony-murder conviction. The district court held that because Count Two was premised on a theory that Gilbert committed a murder "while committing" an aggravated robbery, and because the "while committing" element was part of aggravated robbery as charged in both Count Three and Count Four, the jury might have used the aggravated robbery in Count Four to support the conviction on Count Two. Because the conviction on Count Four was reversed on direct appeal, the district court reasoned, this uncertainty as to which aggravated-robbery conviction was the basis for the conviction on Count Two violated Gilbert's right under the Sixth Amendment and the Due Process Clause to "a jury determination that [he] is guilty of every element of the crime

with which he is charged, beyond a reasonable doubt." For this principle, the district court cited *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000).

But *Apprendi* is a sentencing case, and in it, the Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. The issue in the habeas petition here is whether the reversal of Count Four could possibly have made any difference to the jury's verdict. And if the charge would have made no difference, it does not merit habeas relief. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (holding that under the harmless-error standard, petitioners are entitled to habeas relief only if the alleged error resulted in "actual prejudice"). The crime at issue was the felony murder charged in Count Two; that is, purposely causing the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, aggravated robbery. The jury found Gilbert guilty beyond a reasonable doubt of the aggravated, non-felony murder charged in Count One, and of the aggravated robbery through the use of a weapon charged in Count Three. Those verdicts were affirmed on direct appeal and have not been challenged collaterally. At the very least, therefore, the jury concluded beyond a reasonable doubt that Gilbert had, during the same incident, committed a felony—aggravated robbery—and murdered the individual he had robbed. In light of those determinations, no reasonable jury could have also found that Gilbert was not guilty of felony murder.

The later—and subsequently overruled—reversal of the conviction on the aggravated robbery charged in Count Four is immaterial to the conviction on Count Two, and no Supreme Court precedent requires a contrary conclusion. The district court therefore erred in granting habeas relief on Count Two.

**III.**

For the foregoing reasons, we AFFIRM the district court's denial of habeas relief on Gilbert's ineffective-assistance-of-counsel claim and REVERSE the district court's granting of the writ on the felony-murder count.